CLYDE & CO US LLP
200 Campus Drive
Suite 300
Florham Park, N.J. 07932-0950
(973) 210-6700
Attorneys for Plaintiff,
Ramada Worldwide Inc., f/k/a Ramada Franchise Systems, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., formerly known as RAMADA FRANCHISE SYSTEMS, INC., a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SOUTHPORT, LLC, a Missouri Limited Liability Company; GARY ALLEN, an individual; and IRA DOCKINS, an individual,<br><br>　　　　Defendants. | Civil Action No. 11-cv-03676 (DMC)(JAD)<br><br>STATEMENT OF UNDISPUTED MATERIAL FACTS |

Pursuant to Local Civil Rule 56.1, plaintiff, Ramada Worldwide Inc, formerly known as Ramada Franchise Systems, Inc. ("RWI"), submits the following statement of material facts, as to which there is no genuine issue to be tried, in support of its Motion for an Order granting summary judgment on liability and damages as to the Second, Fourth, Sixth, and Seventh Counts of its Complaint against defendants, Southport, LLC, Gary Allen, and Ira Dockins (collectively, "Defendants"), and dismissing Defendants' Counterclaim with prejudice.

**Background**

1.　Plaintiff, Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business in Parsippany, New Jersey. (Affidavit of Valerie Capers Workman ("Workman Aff."), at ¶ 3).

2.   Defendant Southport, LLC ("Southport") is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 2121 Ridge Road, Arnold, Missouri 63010. (Workman Aff., at ¶ 6).

3.   Defendant Gary Allen ("Allen") is a principal of Southport and is a citizen of the State of Missouri, residing at 2058 Bender Lane, Arnold, Missouri 63010. (Certification of Bryan P. Couch ("Couch Cert."), ¶ 3, Exhibit A at 10:6-7).

4.   Defendant Ira Dockins ("Dockins") is a principal of Southport and is a citizen of the State of Wisconsin, residing at 3926 Sienna Court, Franksville, Wisconsin 53126. (Couch Cert., ¶ 4, Exhibit B at 13:15-21 ).

5.   RWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services. (Workman Aff., at ¶ 4).

6.   RWI does not own or operate any hotels. Instead, RWI operates a guest lodging facility franchise system comprised of federally-registered trade names, service marks, logos, and derivations thereof (the "Ramada® Marks"), as well as the distinctive Ramada® System. (Workman Aff., at ¶ 5).

**The Agreements Between the Parties**

7.   On or about May 8, 2003, RWI entered into a license agreement (the "License Agreement") with Southport for the operation of a 70-room Ramada® guest-lodging facility located at 2121 Ridge Road, Arnold, Missouri 63010, Site No. 30389-97726-1 (the "Facility"). (Workman Aff., at ¶ 9, Exhibit A).

8. Allen was a principal of Southport as of May 8, 2003. (Couch Cert., ¶ 3, Exhibit A at 14:7-14).

9. Allen executed the License Agreement on behalf of Southport. (Couch Cert., ¶ 3, Exhibit A at 14:7-14, and ¶ 5, Exhibit C at ¶ 1).

10. Allen had the opportunity to read the License Agreement before he signed it. (Couch Cert., ¶ 3, Exhibit A at 25:21-24, and ¶ 5, Exhibit C at ¶ 2).

11. Pursuant to section 5 of the License Agreement, Southport was obligated to operate a Ramada® guest lodging facility for a fifteen-year term. (Workman Aff., at ¶ 10, Exhibit A, § 5).

12. Pursuant to section 7 and Schedule C of the License Agreement, Southport was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees"). (Workman Aff., at ¶ 14, Exhibit A, § 7 and Schedule C).

13. Pursuant to section 7.1.1 of the License Agreement, Southport was required to pay RWI a monthly Royalty fee equal to "four percent (4.0%) of Gross Room Revenues of the Facility." (Workman Aff., at ¶ 12, Exhibit A, § 7.1.1).

14. Pursuant to section 7.1.2 and Schedule C of the License Agreement, Southport was required to pay RWI a monthly RINA Services Assessment Fee equal to "4.5% of Gross Room Revenues" of the Facility. (Workman Aff., at ¶ 12, Exhibit A, § 7.1.2 and Schedule C).

15. Pursuant to section 7.3 of the License Agreement, Southport agreed that interest is payable "on any past due amount payable to [RWI] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Workman Aff., at ¶ 14, Exhibit A, § 7.3).

16.     Pursuant to section 3.8 of the License Agreement, Southport was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by Southport at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI. (Workman Aff., at ¶ 15, Exhibit A, § 3.8).

17.     Pursuant to section 3.8 of the License Agreement, Southport agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, Southport agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts. (Workman Aff., at ¶ 15, Exhibit A, § 3.8).

18.     Pursuant to section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to Southport, for various reasons, including Southport's (a) failure to pay any amount due RWI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured. (Workman Aff., at ¶ 17, Exhibit A, § 11.2).

19.     Pursuant to section 12.1 of the License Agreement, Southport agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the License Agreement. (Workman Aff., at ¶ 18, Exhibit A, § 12.1).

20. Section 12.1 of the License Agreement set liquidated damages for the Facility at $2,000 for each guest room of the Facility Southport was authorized to operate at the time of termination; thus, Southport agreed to liquidated damages in the amount of $140,000 ($2,000 x 70 rooms). (Workman Aff., at ¶ 19, Exhibit A, § 12.1).

21. Pursuant to section 17.4 of the License Agreement, Southport agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." (Workman Aff., at ¶ 20, Exhibit A, § 17.4).

22. Section 4.3.1 of the License Agreement provides that RWI will market the Ramada® brand "in [its] discretion" including: "(i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature and type of advertising copy, other materials and programs." Additionally, "[RWI does] not promise that the Facility or [Southport] will benefit directly or proportionately from marketing activities." (Workman Aff., at ¶ 21, Exhibit A, § 4.3.1).

23. Section 14.3 of the License Agreement provides that "[t]here are no express or implied covenants or warranties, oral or written, between [RWI and Southport] except as expressly stated in this Agreement." (Workman Aff., at ¶ 22, Exhibit A, § 14.3).

24. On or about May 8, 2003, RWI entered into an Addendum to the License Agreement for Satellite Connectivity Services (the "Satellite Addendum") with Southport. (Workman Aff., at ¶ 23, Exhibit B).

25. Allen executed the Satellite Addendum on behalf of Southport. (Couch Cert., ¶ 3, Exhibit A at 27:9-24, and ¶ 5, Exhibit C at ¶ 3).

26. Allen had the opportunity to read the Satellite Addendum before he signed it. (Couch Cert., ¶ 3, Exhibit A at 27:25 to 28:2, and ¶ 5, Exhibit C at ¶ 4).

27. Pursuant to section 13(c) of the Satellite Addendum, Southport agreed that, in the event of a termination of the Satellite Addendum, including by virtue of termination of the License Agreement, it would pay Satellite Addendum Liquidated Damages to RWI in the amount of $1,000.00 within 10 days following the date of termination. (Workman Aff., at ¶ 24, Exhibit B, § 13(c)).

28. Effective as of the date of the License Agreement, Allen and Dockins provided RWI with a Guaranty of Southport's obligations under the License Agreement. (Workman Aff., at ¶ 25, Exhibit C).

29. Allen personally executed the Guaranty. (Couch Cert., ¶ 3, Exhibit A at 28:15-25, and ¶ 5, Exhibit C at ¶ 5).

30. Allen had the opportunity to read the Guaranty before he signed it. (Couch Cert., ¶ 3, Exhibit A at 28:15 to 29:6).

31. Dockins personally executed the Guaranty. (Couch Cert., ¶ 5, Exhibit C at ¶ 7).

32. Pursuant to the terms of the Guaranty, Allen and Dockins agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause [Southport] to perform, each unpaid or unperformed obligation of [Southport] under the [License] Agreement." (Workman Aff., at ¶ 26, Exhibit C).

33. Allen and Dockins also agreed in the Guaranty, which incorporated section 17 of the License Agreement by reference, that they would pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement. (Workman Aff., at ¶ 27, Exhibit C).

34. In connection with entering into the License Agreement and effective as of June 16, 2003, Southport made, and Allen and Dockins co-made, a Development Incentive Note for $105,000.00 (the "Note"), in which one-fifteenth of the original principal amount of the Note would be forgiven without payment on each anniversary of the Facility's Opening Date. (Workman Aff., at ¶ 28, Exhibit D).

35. Allen executed the Note on behalf of Southport. (Couch Cert., Exhibit C at ¶ 9).

36. Allen personally executed the Note as a co-maker. (Couch Cert., ¶ 5, Exhibit C at ¶ 10).

37. Dockins personally executed the Note as a co-maker. (Couch Cert., ¶ 5, Exhibit C at ¶ 12).

38. In June 2003, RWI disbursed the principal sum of the Note, in the amount of $105,000.00, to Southport. (Workman Aff., at ¶ 29, Exhibit D).

39. The Note provides that upon the disbursement of the principal sum of the Note, Southport, Allen, and Dockins became obligated to repay or discharge the Note. (Workman Aff., at ¶ 30, Exhibit D).

40. Pursuant to the terms of the Note, if a termination of the License Agreement should occur, "the outstanding, unamortized principal balance of this Note shall be immediately due and payable [to RWI] without further notice, demand or presentment." (Workman Aff., at ¶ 31, Exhibit D).

41. The Note provides that if Southport, Gary Allen, and/or Ira Dockins do not pay the Note within (10) days after it is due, it shall bear simple interest at a rate of the lesser of eighteen percent or the highest rate allowed by law. The Note also provides that "[i]f this Note is

collected by or through an attorney at law, [RWI] shall be entitled to collect reasonable attorneys' fees and all costs of collection." (Workman Aff., at ¶ 32, Exhibit D).

**Defendants' Breach of the License Agreement and Guaranty**

42.   Beginning in 2010, Southport repeatedly failed to meet its financial obligations under the License Agreement. (Workman Aff., at ¶ 33).

43.   By letter dated February 18, 2010, a true copy of which is attached hereto as Exhibit E, RWI advised Southport that (a) it was in breach of the License Agreement because it owed RWI approximately $50,347.75 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement, and (c) if the default was not cured, then the License Agreement might be subject to termination. (Workman Aff., at ¶ 34, Exhibit E).

44.   By letter dated May 10, 2010, a true copy of which is attached hereto as Exhibit F, RWI advised Southport that (a) it was in breach of the License Agreement because it owed RWI approximately $64,444.53 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement, and (c) if the default was not cured, then the License Agreement might be subject to termination. (Workman Aff., at ¶ 35, Exhibit F).

45.   By letter dated September 23, 2010, a true copy of which is attached hereto as Exhibit G, RWI advised Southport that (a) it was in breach of the License Agreement because it owed RWI approximately $90,533.51 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement,

and (c) if the default was not cured, then the License Agreement might be subject to termination. (Workman Aff., at ¶ 36, Exhibit G).

46. By letter dated September 27, 2010, a true copy of which is attached as Exhibit H, RWI terminated the License Agreement effective December 26, 2010 due to Southport's continued failure to meet its financial obligation under the License Agreement, and advised Southport that it was required to pay to RWI as liquidated damages for premature termination the sum of $141,000.00 as required under the License Agreement, all outstanding Recurring Fees through the date of termination, and the outstanding, unamortized principal balance of the Note. (Workman Aff., at ¶ 37, Exhibit H).

**Damages Sought By RWI In This Action**

47. Despite due demand, Defendants have not paid RWI the outstanding Recurring Fees, liquidated damages, or unamortized principal balance of the Note due under the License Agreement, Guaranty, and Note; nor have they paid any interest on these items. (Workman Aff., at ¶ 38; Couch Cert., ¶ 5, Exhibit C at ¶¶ 15-17).

**Recurring Fees**

48. Defendants owe Recurring Fees to RWI in the amount of $229,021.89 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to section 7.3 of the License Agreement) as of November 5, 2012. (Workman Aff., at ¶¶ 39-40, Exhibit I).

**Liquidated Damages**

49. The purpose of the liquidated damages clause in the License Agreement is to compensate RWI for the damages it suffers if a License Agreement terminates before expiration. (Workman Aff., at ¶ 41).

50. The actual damages which the clause seeks to forecast are in the nature of lost Recurring Fees that RWI would otherwise have received but for the premature termination. In the absence of termination, the Recurring Fees are based on a percentage of the Facility's gross room revenue reported by the licensee. (Workman Aff., at ¶ 42).

51. When the parties sign a License Agreement, it is difficult, if not impossible, to precisely estimate these damages. Unlike other commercial real estate activities with more certain revenues produced by longer rental with the same tenant, the transient lodging business operates for the most part, with daily rentals to different guests. (Workman Aff., at ¶ 43).

52. Gross room revenues at any particular hotel fluctuate from month to month depending on factors such as the national, regional and local economy, the irregular travel patterns of commercial and leisure travels, the entry and withdrawal of competitors in the market, and the effort, skill and resources of the licensee. (Workman Aff., at ¶ 44).

53. The liquidated damages formula represents a good faith estimate of the monetary damages that RWI sustains when a licensee causes the premature termination of a license agreement. (Workman Aff., at ¶ 45).

54. Section 12.1 of the License Agreement set liquidated damages for the Facility to be the product of $2,000.00 multiplied by the number of guest rooms Southport was authorized to operate at the Facility. At the time of termination, Southport was operating 70 guest rooms at the Facility. Thus, $2,000.00 multiplied by 70 guest rooms equals $140,000.00. (Workman Aff., at ¶ 46, Exhibit A, § 12.1).

55. Section 13(c) of the Satellite Addendum establishes a minimum payment of $1,000.00 for early termination of the Satellite Addendum. (Workman Aff., at ¶ 47, Exhibit B, § 13(c)).

56.     Accordingly, RWI is seeking $141,000.00 in liquidated damages that became due as a result of the premature termination of the License Agreement and the Satellite Addendum. RWI is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $47,141.34 from January 25, 2011 (30 days from the date of termination) through December 3, 2012 (the anticipated return date of this Motion), which amounts to 678 days. The $47,141.34 figure is calculated by multiplying $141,000.00 by 18% per year, which equals $25,380.00 in interest per year. That amount is then divided by 365 days to equal $69.53 in interest per day. When the per diem interest of $69.53 is multiplied by 678 days, the interest owed equals $47,141.34. (Workman Aff., at ¶ 48).

### The Note

57.     RWI is now seeking the principal sum of the Note, $105,000.00, less amounts forgiven of $49,000.00, for a total of $56,000. (Workman Aff., at ¶ 49).

58.     Pursuant to the terms of the Note, RWI is entitled to interest on this amount calculated at the legal rate of interest of 18% per annum in the amount of $19,527.34 from December 27, 2010 (the date the Note became due and payable after Defendants' termination) through December 3, 2012 (the anticipated return date of this Motion), which amounts to 707 days. The $19,527.34 figure is calculated by multiplying $56,000.00 by 18% which equals to $10,080.00 in interest per year; that amount is then divided by 365 days to equal $27.62 in interest per day. When the per diem interest of $27.62 is multiplied by 707 days, the interest owed equals $19,527.34. (Workman Aff., at ¶ 50).

### Attorneys' Fees

59.     According to section 17.4 of the License Agreement, RWI is entitled to collect reasonable attorneys' fees and costs incurred in connection with legal proceedings instituted to

recover monies due and owing under the License Agreement. RWI has incurred attorneys' fees and costs totaling $5,000.00 and $3,395.01, respectively, in the course of this matter. (Workman Aff., at ¶ 51, Exhibit A, § 17.4; Couch Cert., ¶¶ 18-20, Exhibit O).

### Total Damages

60.  In total, RWI seeks $501,085.58, inclusive of outstanding Recurring Fees, liquidated damages, unamortized principal balance of the Note, interest, attorneys' fees, and costs. (Workman Aff., at ¶ 52).

CLYDE & CO US LLP
Attorneys for Plaintiff,
Ramada Worldwide Inc.,
f/k/a Ramada Franchise Systems, Inc.

By: _____
BRYAN P. COUCH

Dated: 11/9/12