# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | |
| RAMADA WORLDWIDE INC., formerly : | **Hon. Dennis M. Cavanaugh** |
| known as RAMADA FRANCHISE : | |
| SYSTEMS, INC., a Delaware Corporation,: | |
| : | **OPINION** |
| Plaintiff, : | |
| : | Civil Action No. 11-cv-03676 (DMC)(JAD) |
| v. : | |
| : | |
| SOUTHPORT, LLC a Missouri Limited : | |
| Liability Company; and GARY ALLEN, : | |
| an individual; and IRA DOCKINS, an : | |
| individual, : | |
| : | |
| Defendants. : | |
| : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter having come before the Court upon Plaintiff Ramada Worldwide Inc.'s,

formerly known as Ramada Franchise Systems, Inc., ("Plaintiff" or "Ramada") Motion for

Summary Judgment as to the Second, Fourth, Sixth, and Seventh Counts of its Complaint and to

Dismiss Defendants Southport, LLC ("Southport"), Gary Allen ("Allen"), and Ira Dockins'

("Dockins") Counterclaim (collectively "Defendants") Counterclaim.   (Pl.'s Mot. for Summ.

Judg., Nov. 9, 2012, ECF No. 19).   Pursuant to FED. R. CIV. P. 78, no oral argument was heard.

After carefully considering the submissions of the parties, and based upon the following, it is the

finding of this Court that Plaintiff's Motion for Summary Judgment and Motion to Dismiss are

**granted.**

# I.    BACKGROUND[1]

Ramada filed this Motion for Summary Judgment on November 9, 2012 against

Defendants Southport, Allen, and Dockins seeking an Order with respect to the Second, Fourth,

Sixth and Seventh Counts of its Complaint to recover damages and other monies allegedly

withheld by Defendants under a license agreement.

Ramada, formerly known as Ramada Franchise Systems, Inc., is a Delaware corporation

with its principal place of business in Parsippany, New Jersey.   (Aff. of Valerie Capers Workman

("Workman Aff.") at ¶ 3, Nov. 9, 2012, ECF No. 19-5).   Ramada operates a guest lodging facility

franchise system, which consists of federally-registered trade names, service marks, logos and the

distinctive Ramada® System.   (Id. at ¶ 5).

Southport is a Missouri limited liability company with its principal place of business at

2121 Ridge Road, Arnold, Missouri.   (Id. at ¶ 6).   Allen and Dockins are the principals of

Southport, and are citizens of Missouri and Wisconsin, respectively.   (Id. at ¶¶ 7-8).

On or about May 8, 2003, Southport executed a license agreement (the "License

Agreement") with Ramada to operate a 70-room Ramada® guest lodging facility located at 2121

Ridge Road, Arnold, Missouri 63010 (the "Facility").   (Id. at ¶ 9).   Pursuant to the terms of the

License Agreement, Southport agreed to make certain periodic payments to Ramada for royalties,

service assessments, taxes, interest, reservation system user fees, and other fees (collectively,

"Recurring Fees").   (Id. at ¶ 11).   Southport also agreed to be subject to an interest penalty equal

to 1.5% per month or the maximum rate allowed by applicable law, whichever is less, for late

payments.   (Id. at ¶ 14).   The License Agreement further provided that Ramada could terminate

---

[1] Unless otherwise indicated, facts contained in the Background section are derived from Plaintiff's Statement of Undisputed Material Facts.   (Pl.'s Statement of Undisputed Material Facts, February 29, 2012, ECF No. 19-2)

the agreement for various reasons, including Southport's failure to render payment to Ramada. (Id. at ¶ 17). In the event of termination, the License Agreement provided that Southport would pay liquidated damages to Ramada in an amount equal to $2,000 for each guest room it operated at the Facility. (Id. at ¶¶ 18-19). In addition, pursuant to an addendum to the License Agreement, Southport agreed to pay an additional $1,000 of liquidated damages to Ramada upon termination. (Pl.'s Mot. Br., Exh. 3 at ¶¶ 24, 27, ECF No. 19-3). Both Allen and Dockins also personally guaranteed Southport's obligations to Ramada under the License Agreement. (Workman Aff. at ¶ 28).

On June 16, 2003, in connection with entering into the License Agreement, Allen and Dockins signed a Development Incentive Note ("Note") with Ramada on behalf of Southport for $105,000. (Id. at ¶ 28). The Note provided that one-fifteenth of the initial principal would be extinguished without payment on each anniversary of the Facility's first day of business. (Id.) However, Southport, Allen and Dockins were obligated to repay any outstanding principal until the entire loan was forgiven. (Id. at ¶ 30). The Note also provided that, in the event of termination, it would be subject to simple interest at a rate the lesser of 18% or the maximum rate permitted under the applicable law. (Id. at ¶ 32).

Beginning on February 18, 2010, Ramada sent a series of letters advising Southport that it was in breach of the License Agreement for its failure to remit required periodic payments of Recurring Fees to Ramada. (Id. at ¶¶ 33-36). Ramada warned that if the default was not cured, the License Agreement might be subject to termination. (Id.) On September 27, 2010, Ramada terminated the License Agreement for Southport's continued failure to satisfy its financial obligations under the contract. (Id. at ¶ 37). Ramada is seeking to recover outstanding recurring fees, interest, liquidated damages, unpaid principal balance of the Note, and attorneys' fees in

connection with Southport's alleged breach of the License Agreement.  (Id. at ¶¶ 38, 52).

## II.   LEGAL STANDARD

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Celotex Corp., 477 U.S. at 330.  "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences—including on issues of credibility—in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (3d Cir. 1980)).

If the non-movant fails to oppose the motion for summary judgment, FED. R. CIV. P. 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate."  See, e.g., Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir.1990); see also Damiano v. Sony Music Entm't ., 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed and created no genuine issue of

material fact).   The motion is appropriately granted when that party is entitled to judgment as a matter of law.   Anchorage Assoc., 922 F.2d at 175.

When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support."   Carp v. IRS, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assoc., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment."   Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar.1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5, n. 8 (E.D. Pa. June 20, 2000).

## III.   DISCUSSION

### A.   Liability under Count Two, Four, and Seven of the Complaint

Ramada contends that there is no question of fact to preclude summary judgment on the issue of whether Defendants failed to comply with the contractual terms set forth in the License Agreement.   Ramada thus demands, in Count Two of its Complaint, judgment against Southport for liquidated damages in the amount of $141,000.000, together with interest, attorneys' fees, and costs of suit.   (Compl. at ¶ 45, June 24, 2011, ECF No. 1).   In Count Four, Ramada seeks judgment against Southport for the Recurring Fees due and owed under the License Agreement, in the amount of $229,021.89, together with interest, attorneys' fees, and costs of suit.   (Pl.'s Mot. Br. 17; Compl. at ¶ 53).   Ramada seeks judgment against Southport, Allen, and Dockins for

damages in the amount of $56,000 due and owed under the Note, together with interest, attorneys' fees, and costs of suit in Count Seven. (Compl. at ¶ 66).

Under New Jersey law,[2] where the "terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." City of Orange Tp. v. Empire Mortg. Services, Inc., 775 A.2d 174, 179 (N.J. Sup. Ct. App. Div. 2001) (citations omitted). The initial determination of whether a contract's terms are clear or ambiguous is a question of law, suitable for decision on a motion for summary judgment. See J.I. Hass Co., Inc. v. Gilbane Bldg. Co., 881 F.2d 89, 92 (3d Cir. 1989), cert denied 493 U.S. 1080 (1990) (recognizing that when a contract is unambiguous "the determination of the parties intent is purely a question of law within the exclusive province of the trial court"); Driscoll Const. Co., Inc. v. State Dept. of Transportation, 853 A.2d 270, 276 (N.J. Sup. Ct. App. Div. 2004) (noting the interpretation of a contract is typically a legal question that may be decided by the court on a summary judgment motion). A review of the relevant provisions of the License Agreement and Guaranty lead this Court to conclude that the clauses regarding the Recurring Fees, liquidated damages, amount due on the Note, and attorneys' fees are not ambiguous. (See Workman Aff., Exh. A, B, Nov. 9, 2012, ECF No. 19-5). Further, Defendants do not dispute the validity of the contractual provisions providing for these damages and fees.

This Court next looks to whether Southport complied with the terms of the License Agreement. This Court agrees that there is no question of fact that precludes summary judgment as to whether Southport violated the terms of the License Agreement. Pursuant to Section 7 and Schedule C of the License Agreement, Southport was bound to make periodic payments to

---

2 In the diversity of citizenship action, for purposes of the present motion, New Jersey law governs the claims asserted by Ramada in the Complaint based on the choice of law provision contained in Section 17.6.1 of the License Agreement.

Ramada for Recurring Fees. Under Section 7.1.1 of the License Agreement, Southport was obligated to pay Ramada a monthly royalty fee equal to "four percent (4.0%) of Gross Room Revenues of the Facility." (Workman Aff., Exh. A § 7.1.1). Southport was further obligated to pay Ramada a monthly Ramada Inns National Association ("RINA") Services Fee equal to "4.5% of Gross Room Revenues" of the Facility, pursuant to Section 7.1.2 and Schedule C of the License Agreement. (Workman Aff., Exh. A § 7.1.2, Sch. C). Under Section 7.3, Southport agreed that interest is payable "on any past due amount payable to [Ramada] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Workman Aff., Exh. A § 7.3).

Defendants do not dispute that they breached the License Agreement, specifically acknowledging that they failed to pay the franchise fees owed. (Certification of Bryan P. Couch "Couch Cert." at ¶ 5, Nov. 9, 2012, Exh. C at ¶ 17). Beginning in 2010, Southport failed to remit timely payments to Ramada for outstanding Recurring Fees, as provided for under the terms of the License Agreement. (Workman Aff., at ¶ 38). Additionally, after termination of the Agreement, Defendants acknowledge that they did not pay outstanding fees, the unamortized principal balance of the Note, and liquidated damages as required by the terms of the License Agreement and Note. (Couch Cert. at ¶ 5, Exh. C at ¶¶ 15-17); see, e.g., Port Auth. of N.Y. and N.J. v. Affiliated FM Ins., 245 F. Supp. 2d 563, 572 n.9 (D.N.J. 2001) (". . . it is incumbent on the responding party to issue a meaningful rejoinder to a given statement of material fact, lest that fact be deemed undisputed"). This Court finds that because these contractual provisions are not reasonably susceptible to differing interpretations, there is no ambiguity to be resolved that would preclude summary judgment. See American Cyanamid v. Fermenta Animal Health Co., 54 F.3d 177, 181 (3d Cir. 1995). The obligations to be incurred by Southport, if it were to fail to comply with the

provisions of the License Agreement, were set forth in the Agreement and are not disputed. "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. CIV. R. 56.1(a). In light of this lack of contradicted evidence and the unambiguity of the contract terms, all the elements necessary to establish a breach of the License Agreement by Southport are present.

Defendants attempt to assert defenses to the breach, and that is the focus of the pleading in opposition to the instant motion. Primarily, Defendants argue that they can successfully maintain a defense under the doctrine of unclean hands and that this presents a genuine issue of material fact. (Defs.' Opp'n Br. 11, Nov. 20, 2012, ECF No. 20). In support of this theory, Defendants' assert that Ramada's representatives fraudulently induced Defendants to enter into the License Agreement by promising a 20% increase in revenue immediately upon opening, as well as improved advertising and support. (Defs.' Opp'n Br. 10).

In order for the doctrine of unclean hands to be applicable, a relationship between the inequitable conduct and the claims must be found, and if found, the Court maintains discretion to apply the doctrine to only a portion of the plaintiff's claims. See, e.g., Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 146 (1933). To successfully apply this doctrine, Defendants must prove fraud, unconscionability, or bad faith on Ramada's part. See S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 377, n. 7 (3d Cir. 1992) ("To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff"). Defendants are unable to meet his burden. Defendants allege only that Ramada: (1) failed to inform Defendants that the "Ramada Limited and Suites" brand would be removed from their family of hotels, (2) made representations that the revenue for the Facility would increase due to Ramada's marketing efforts, (3) induced Defendants to terminate their existing agreement with

8

the Microtel® brand by offering a loan. (Defs.' Opp'n Br. 15). However, this is both unsupported by the record and insufficient to thwart summary judgment in Ramada's favor. Further, the record demonstrates that Defendants agreed to each of these modifications at the time the License Agreement was made, evidenced by Allen's signature on the punchlist he executed on behalf of Southport. (See Workman Aff., Exh. A, Sch. B). Additionally, to the extent that Defendants allege that they were told they would receive a 20% increase in revenue by switching to the Ramada brand because of Ramada's marketing, this argument is similarly unpersuasive. Section 4.3.1 of the License Agreement provides that Ramada will market the Ramada brand "in [its] discretion" including: "(i) The nature and type of media placement; (ii) The nature and type of advertising copy, other materials and programs." (See Workman Aff., Exh. A, § 4.3.1). Additionally, as per the terms of the License Agreement, Ramada does "not promise that the Facility or [Southport] will benefit directly or proportionately from marketing activities." (See Workman Aff., Exh. A, § 4.3.1). Furthermore, subsequent provisions of the License Agreement explicitly state that the writing is wholly integrated and disclaim any and all oral or written promises or representations not included in the contract. (See Workman Aff., Exh. A, §§ 14.3, 17.7.2, 17.7.3). Therefore, to the extent that the Defendants attempt to rely on an exception to the parole evidence rule to introduce the aforementioned statement, that argument is inapplicable.

Furthermore, even if the defenses asserted were recognized as valid, they do not excuse Southport's admitted breaches of the License Agreement and Note to which they were bound. See S & R Corp. v. Jiffy Lube Int'l Inc., 968 F.2d 371, 376 (3d Cir. 1992) ("Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits"); Specialties Dev. Corp., v. C-O-Two Fire Equipment Co., 109 F. Supp. 732, 735 (D.N.J. 1953) (recognizing the legal premise that a defendant's failure to terminate the

contract in the face of a material breach of the license agreement may constitute a waiver of the breach and an election to continue performance thereunder).

Due to Southport's failure to make required payments pursuant to the License Agreement while continuing to operate in accordance with the Agreement, the Plaintiff is entitled to summary judgment on the issue of liability for Counts Two, Four, and Seven. "It is clear that defendants' allegations . . . are separate, unrelated claims which, even if proven, would not bar summary judgment on this cause of action." McDonald's Corp. v. Robert A. Makin, Inc., 653 F. Supp. 401, 404 (W.D.N.Y. 1986). The affirmative defenses raised by Defendants are not sufficient to defeat the instant Motion. Ramada's Motion for Summary Judgment is thus granted on Counts Two, Four, and Seven.

### B.    Liability Under Count Six of the Complaint

Plaintiff further alleges that Ramada is entitled to Summary Judgment as to liability on the sixth count of the Complaint as no genuine issue of material fact exists regarding Allen and Dockin's breach of the Guaranty. (Compl. at ¶ 66). To be entitled to a judgment on a guaranty, a plaintiff must show: "(1) execution of the guarantee by the guarantor (i.e. that it was the defendant who signed the guarantee); (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by principal obligator; (5) written demand for payment on the guarantee; (6) failure of the guarantor to pay upon written demand." U.S. on Behalf of Small Business Admin. v. DelGuercio, 818 F. Supp. 725, 727-28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am. Jur. 2d § 119). Each element has been established here.

First, Defendants Allen and Dockins do not dispute that they each executed the Guaranty (Couch Cert., at ¶ 3, Exh. A at 28:15-25, and ¶ 5, Exh. C at ¶¶ 5,7). Second, the terms of the

Guaranty and the obligations therein are unambiguous. If the terms of the contract are unambiguous, the court may construe the meaning or requirements of a contract as a matter of law for purposes of summary judgment. Nevets C.M. Inc. v. Mack Trucks, Inc., 726 F. Supp. 525, 531 (D.N.J. 1989), aff'd, 899 F. 2d 1218 (3d Cir. 1990). Allen and Dockins were required under the terms of the Guaranty to "immediately make each payment and perform or cause [Southport] to perform, each unpaid or unperformed obligation of [Southport] under the Agreement." (Workman Aff., at ¶ 26, Exh. C). Defendants have not alleged any inability to understand the terms of the Guaranty. The contractual provisions of the Guaranty are not subject to differences of interpretation and therefore there is no ambiguity to be resolved that would preclude summary judgment. See American Cyanamid v. Fermenta Animal Co., 54 F.3d 177, 181 (3d Cir. 1995).

Third, by its own terms, the express purpose of the Guaranty was to induce Ramada to enter in to the License Agreement with Southport. (Workman Aff., at ¶ 25). The reliance element has thus been fulfilled. As discussed above, it is similarly not disputed that Southport defaulted under the terms of the License Agreement by failing to timely pay Ramada the fees owed, in fulfillment of the fourth element. Fifth, Ramada has demonstrated that it notified Allen and Dockins of Southport's default under the terms of the License Agreement and its intention to terminate the License Agreement if the defaults were not cured in letters dated February 18, 2010, May 10, 2010, September 23, 2010, and September 27, 2010. (Workman Aff., at ¶¶ 34-37, Exh. E-H). Finally, despite these written demands for payment, Allen and Dockins have not remitted payment of outstanding Recurring Fees, liquidated damages, and unamortized principal balance of the Note owed due to the early termination of the License Agreement. (Workman Aff., at ¶ 38; Couch Cert., ¶ 5, Exh. C at ¶¶ 15-17).

Ramada has asserted facts to prove each element of breach of the Guaranty, and such facts

11

are appropriately supported by the record and, in some cases, undisputed by the Defendants. Ramada has demonstrated that there is no genuine issue of material fact and thus is entitled to summary judgment on the Sixth Count of the Complaint.

### C. Damages

Plaintiff has also requested this Court grant its motion for summary judgment with respect to the following damage claims: (1) outstanding Recurring Fees in the amount of $229,021.89 (inclusive of interest through November 5, 2012); (2) liquidated damages in the amount of $141,000.000; (3) the unamortized principal balance of the Note in the amount of $56,000.00, due to Ramada at the time of termination of the License Agreement. (Pl.'s Mot. Br. 16). Ramada also seeks an award of prejudgment interest on the above amounts, as well as attorneys' fees and costs of suit. Defendants have not addressed Ramada's damage claims in their opposition pleading.

### 1. Recurring Fees

Ramada asserts that Section 7 and Schedule C of the License Agreement obligate Defendants to make payment of Recurring Fees, an obligation that Defendants have failed to fulfill. (See Pl.'s Brief 16). Defendants raise no arguments concerning the payment of or amount to be paid in Recurring Fees. The obligations incurred by Defendants pursuant to the aforementioned sections of the License Agreement are presented in a detailed listing of required Recurring Fees, leaving no question as to how such fees should be calculated. When the License Agreement was terminated, Defendants were in default of their financial obligations to Ramada.

Ramada also seeks prejudgment interest on Recurring Fees, in accordance with Section 7.3 of the License Agreement. Prejudgment interest is intended to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered. In re

Bankers Trust Co., 658 F.2d 103, 108 (3d Cir. 1981). Section 7.3 of the License Agreement applies interest on past-due recurring fees at a rate of 1.5% per month. (Workman Aff., Exh. A, § 7.3). Accordingly, this Court grants summary judgment on this claim and Ramada is entitled to summary judgment in the amount of $229,021.89, inclusive of interest, in damages pursuant to the Fourth and Sixth Counts of the Complaint. This figure includes interest through November 5, 2012, as calculated in Ramada's pleadings. Ramada has attached an itemized statement of those fees to the Workman Affidavit and the Court is satisfied that Ramada has demonstrated the amount of Recurring Fees owed by Southport. (Workman Aff., Exh. I).

### 2. Liquidated Damages

Ramada seeks liquidated damages from Defendants pursuant to Section 12.1 of the License Agreement and Section 13(c) of the Satellite Addendum. (Pl.'s Mot. Br. 18). Under New Jersey law, liquidated damages provisions are enforceable where: (1) the damage sustained by the non-breaching party would be difficult to ascertain, and (2) the amount is a reasonable forecast of the loss sustained. Wasserman's Inc. v. Middletown, 645 A.2d 100, 106 (N.J. Sup. Ct. 1994) (citations omitted). In evaluating a liquidated damages clause, the court looks to the reasonableness of the clause "either at the time of contract formation or at the time of the breach." Naporano Assocs., L.P. v. B & P Builders, 309 N.J. Super. 166, 176 (App. Div 1998) (quoting Wasserman's, 645 A.2d at 107). When two commercial parties have comparable bargaining power, a presumption exists that the liquidated damages clause is valid. Wasserman's, 645 A.2d at 107. The party owing liquidated damages had the burden "to offer proof of contractually acceptable excuses in order to avoid the application of the liquidated damages clause." Monsen En'g Co. v. Tami-Githens, Inc., 530 A.2d 313, 318 (App. Div. 1987). Whether an unambiguous liquidated damages clause is valid and enforceable is a question for the court. Naporano, 309 N.J.

Super. at 176 (citing <u>Wasserman's</u>, 645 A.2d at 109).

Section 12.1 of the License Agreement sets liquidated damages as the product of $2,000.000 multiplied by the number of guest rooms Southport was authorized to operate at the Facility.   At the time of termination of the License Agreement, Southport was operating 70 guest rooms at the Facility.   Therefore, $2,000.000 multiplied by 70 guest rooms is $140,000.00. (Workman Aff., at ¶ 46, Exh. A § 12.1).   Section 13(c) of the Satellite Addendum specifically sets liquidated damages for termination of the Satellite Addendum at $1,000.00.   (Workman Aff., at ¶ 47, Exh. B § 13(c)).

The language presented in the liquidated damages clauses demonstrates a clear intent by the parties to choose among the available remedies and a good faith attempt to fix adequate compensation for a loss resulting from the premature termination of the License Agreement. Further, as the amount of fees is tied to monthly gross room revenues of the Facility, Ramada correctly asserts that actual damages resulting from the breach amount are extremely difficult to estimate as room rates and occupancy levels are constantly in flux.   Even without this, Defendants have failed to establish, and have made no attempt to establish, that the liquidated damage clauses are invalid nor offered proof of any contractually acceptable excuse to avoid the application of the clauses.   Ramada is therefore entitled to summary judgment on the issue of liquidated damages in the amount of $141,000.000.

Ramada further claims it is entitled to interest on this amount calculated at the rate of interest of 1.5% per month, totaling $47,141.34 from January 25, 2011 – 30 days from the date of termination – through December 3, 2012 – the motion return date on the instant motion (678

days).[3]   This Court disagrees.   Section 7, providing for Recurring Fees, specifically discusses a 1.5% interest rate.   The liquidated damages clause, contained in Section 12, contains no mention of interest nor references Section 7.   Section 7 similarly does not refer to Section 12.   A contract is required to be construed as a whole and the Court must ascertain the interests of the parties based on "the entire instrument and not from detached portions."   Krosnowski v. Krosnowski, 126 A.2d 182, 188 (N.J. Sup. Ct. 1956) (citations omitted); see Ramada Franchise Sys. Inc., v. Polmere Lodging Corp., No. 98 -2909, 1999 U.S. Dist. LEXIS 23435, at *11 (D.N.J. July 30, 2009) (finding the interest provision contained in the section of the licensing agreement pertaining to recurring fees not applicable to the subsequent section regarding liquidated damages).   Viewing the License Agreement in whole, the Court finds Section 12 cannot be read to infer application of an interest provision contained in Section 7 of the agreement.   The Court therefore grants summary judgment on the amount of liquidated damages without interest.

### 3.   The Note Claim

Ramada also seeks the principal sum of the Note, $105,000.00, less amounts forgiven of $49,000.00, for a total of $56,000.00.   Pursuant to the terms of the Note, Defendants were obligated to pay the outstanding, unamortized principal balance of the Note immediately upon the termination of the License Agreement.   (Workman Aff., at ¶ 31, Exh. D).   However, Defendants have failed to make such a payment to Ramada despite the clear and unambiguous contract provision requiring such payment.   See Fleming Co. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 847 (D.N.J. 1995) (enforcing an unambiguous contract provision by way of summary judgment).

---

3 This figure is calculated by multiplying $141,000.00 by 18% per year, which equals $25,380.00 in interest per year. The amount is then divided by 365 days to equal $69.53 in interest per day.   When the per diem interest of $69.53 is multiplied by the applicable 678 day period, the interest Ramada seeks is $47,141.34.

Ramada is entitled to interest on the unamortized principal balance of the Note calculated at the legal rate of interest of 18% per annum in the amount of $19,527.34. The time frame from which this figure is garnered spans from December 27, 2010 – the date the Note became due and payable after Defendants' termination – through December 3, 2012 – the motions returnable date, as set forth in Ramada's pleadings. See Utica Mut. Ins. Co. v. DiDonato, 187 N.J. Super. 30, 43 (App. Div. 1982) (allowance of prejudgment interest in a criminal case may be determined by a provision in a contract). The $19,527.34 figure is calculated by multiplying $56,000 by 18% which equals $10,080.00 in interest per year; that amount is then divided by 365 days at $27.62 in interest per day. When that per diem rate is multiplied by 707 days, the interest owed is $19,527.34. (Workman Aff., at ¶ 50).

### 4. Attorneys' Fees and Claims

Ramada also requests attorneys' fees incurred in this suit. Under New Jersey law, parties are permitted to contract to shift fees and costs in the event of litigation between them, provided such contractual provisions are reasonable. North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. Sup. Ct. 1999). An assessment of reasonableness is made through consideration of the amount of success achieved by the party seeking reimbursement and the prevailing rates for legal services in the relevant professional and geographical communities. Id. at 848-49. New Jersey "does not have a public policy which would prevail over the enforcement of an express contract between private parties." Papalexiou v. Tower West Condominium, 167 N.J. Super. 516, 531 (Ch. Div. 1979).

In the instant case, Defendants consented, pursuant to Section 17.4 of the License agreement, as incorporated by the Guaranty, to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed

under this Agreement." (Workman Aff., at ¶ 20, Exh. A, § 17.4). It has been determined that Ramada is the prevailing party, and thus, is entitled to reasonable attorneys' fees and costs incurred in connection with the instant action. Pursuant to L. CIV. R. 54.2, Ramada has submitted the billing records of Clyde & Co. US, LLP, detailing how attorneys' fees and costs were calculated. (Couch Cert. at ¶ 19, Exh. O). Therefore, this Court awards Ramada its incurred attorneys' fees and costs totaling $5,000.00 and $3,395.01, respectively, during the course of this matter.

**D. Counterclaims**

This Court will briefly address Defendants' counterclaims. Defendants allege that Ramada breached Section 4.3.1 of the License Agreement by failing to market Ramada® in a manner consistent with Defendants' reasonable expectations and causing Defendants to be unable to generate reasonably expected profits. However, Section 4.3.1 of the License Agreement explicitly states that the manner in which Ramada markets the Ramada® brand is within Ramada's "sole discretion." (Workman Aff., at ¶ 21, Exh. A, § 4.3.1). Furthermore, as detailed in initial section of this Opinion, the License Agreement states that "[Ramada does not] promise that the Facility or [Southport] will benefit directly or proportionately from marketing activities." (Id.)

Furthermore, Defendants have failed to depose a witness or produce any documents in support of their claim. Therefore, Defendants' breach of contract claim may not stand. See Celotex Corp v. Catrett, 477 U.S. 317, 325 (1986) (moving party's burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims); see also Aronsohn v. Mandara, 98 N.J. 92 (1984) (party cannot prevail on breach of contract claim where no express provision of the contract has been violated). Defendants counterclaim is thus dismissed.

## IV.   CONCLUSION

For the reasons stated herein, it is the finding of this Court that Plaintiff's Motion for Summary Judgment as to the Second, Fourth, Sixth, and Seventh Counts of its Complaint is **granted**.   Ramada is awarded Recurring Fees in the amount of $ 229,021.89, with a 1.5% interest rate; liquidated damages in the amount of $141,000.00, without interest; $56,000 in damages for the principal sum of the Note, plus interest in the amount of $19,527.34; and attorneys' fees in the amount of $5,000 and costs in the amount of $3,395.01.   Ramada's Motion to Dismiss Defendants' Counterclaim is also granted.   An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        June **2 7**, 2013
Original:    Clerk's Office
cc:          Hon. Joseph A. Dickson, U.S.M.J.
             All Counsel of Record
             File